# THE PREROGATIVE COURT

OF

# THE STATE OF NEW JERSEY,

MAY TERM, 1882.

---

THEODORE RUNYON, ESQ., ORDINARY.

---

JOHN L. TURNURE et al., appellants,

*v.*

ELLEN TURNURE et al., respondents

1. Where a will contained the usual attestation clause, and the witnesses were not asked, on the trial, whether the testator did or did not make a publication of the instrument as his will when they attested it, but it appeared that, when they were requested to witness it, it was spoken of as the testator's will, and one witness testified that the other told him, in the presence and hearing of the testator, what the paper was, and also that the will had been read aloud, in the presence of the testator (who expressed his approval of it) and of all of the witnesses, before it was signed—*Held*, that there was sufficient evidence of publication to warrant probate.

2. Inequality, or even injustice towards some of a testator's children, in the amounts given to them by the will, does not prove undue influence. It is not enough to prove it to show interest and opportunity.

———

Appeal from order of Hudson orphans court, admitting to probate a paper writing purporting to be the will of William P. Turnure, deceased, and cross-appeal from an order directing payment of the costs and expenses of the litigation out of the estate.

*Mr. R. Wortendyke* and *Mr. J. D. Bedle,* for appellants.

*Mr. A. L. McDermott,* for respondents.

THE ORDINARY

These are appeals from the decree of the orphans court of Hudson county, admitting to probate a paper writing purporting to be the last will and testament of William P. Turnure, deceased, late of Jersey City, and an order directing that the costs and expenses of the litigation be paid out of the estate. The will is dated February 20th, 1873, and was drawn by Peter N. Horsley, a scrivener of that city, at the request of the testator, and its execution was witnessed by Horsley and two other persons, William F. Hulse and Charles Olsen. It gives to the testator's daughter, Mrs. Julia Hard, $2,000; to his son John Lawrence Turnure, $8,000, and all the rest of the estate to his widow and his son James H. Turnure, in equal shares, and appoints the residuary legatees executors. The testator died August 2d, 1880. He was then over eighty-three years of age. The caveators are his son John and daughter, Mrs. Hard, and the will is propounded for probate by the executors. It will be seen that it was made seven years before the testator died. Two of the witnesses to it, Messrs. Horsley and Hulse, were sworn before the court below; the other, Olsen, had left the state, and therefore could not be produced. The proof is clear that the will was drawn at the testator's request and according to his directions. He applied to Horsley on the sub-

ject, on the morning of the day on which the will bears date, and requested him to draw it, giving him directions as to what it should contain. Horsley made an appointment with him to come to the office of the latter in the afternoon of that day, to execute the instrument, and he came accordingly. Horsley had drawn it. Just before it was signed, he read it over to him, in the presenee of the other witnesses, and the testator approved of it, said he was satisfied with it, and that it was drawn up as he wanted it. He signed it in the presence of the three witnesses, who saw him sign it, and signed their names as witnesses, in his presence and in the presence of each other. And they witnessed his execution of the instrument at his request. The caveators insist, however, that the will was not duly published—that the writing was not declared by the testator to be his last will and testament, in the presence of the witnesses. But by the attestation clause, the witnesses certify that the writing was signed, published and declared by the testator to be his last will and testament, in their presence, and that they were present at the same time, and subscribed their names as witnesses in his presence. Neither of them was inquired of, on the trial before the orphans court, as to whether the testator did or did not make or assent to a declaration that the instrument was his last will and testament. Indeed, no question was asked on the subject. "There must," says the ordinary (Williamson), in *Mundy* v. *Mundy, 2 McCart. 290,* "be some declaration by the testator that it was his will, and a communication by him to the witnesses that he desires them to attest it as such. But this need not be done by word; any act or sign by which that communication can be made, is enough. The scrivener, in the presence of the testator, says, ' This is the will of A. B., and he desires you to witness it '—the testator standing by—is a sufficient publication or declaration. The form is immaterial. But the witnesses must know it is the will of the testator they are witnessing, and they must witness it at his request." It appears by the evidence, that the will was, as before stated, read over to the testator, in the presence of the witnesses, just before it was signed, and he expressed his approval of it. It purports to be

his last will and testament. In requesting Hulse and Olsen to witness the execution of it, the paper was spoken of as his will. Horsley testifies that the testator requested the witnesses, Hulse and Olsen, to witness his execution of the paper, and Hulse testifies that Horsley told him, in the presence and hearing of the testator, what the paper was. There is no room for doubt that the testator spoke of the instrument to the witnesses as his will, and requested them to witness it as such. Moreover, as before stated, the will was read over to him in the presence of the witnesses immediately before he signed it. He probably otherwise formally declared the instrument to be his will. But they knew it was his will, and he executed it as such, in their presence, and they witnessed it as his will, at his request. The attestation clause states that the instrument was published and declared by him to be his last will and testament, in the presence of the three witnesses. The effect of this statement is, it may be added, to throw the burden of proving that such declaration was not made, on the opponents of the will. *Mundy* v. *Mundy, 2 McCart. 290 ; Allaire* v. *Allaire, 8 Vroom 312 ; Tappen* v. *Davidson, 12 C. E. Gr. 459 ; Wright* v. *Rogers, L. R. (1 P. & D.) 678.* They have not shown that the certificate of attestation is untrue. It must be held that the testator duly declared the instrument to be his last will and testament. The will is proved to have been executed with all the due legal formalities.

It is further insisted, on the part of the caveators, that the testator, at the time of making the will, was not possessed of testamentary capacity, and that if he was, the will was the result of the undue influence of his wife over him, in her own favor and against the caveator. As to his capacity, it appears clearly, not only from the testimony of the two of the testamentary witnesses who were examined, but otherwise, that he was entirely competent to make a testamentary disposition of his estate. He had, previously to the day on which the will was drawn, spoken to the scrivener about drawing his will, and on that day he gave him all the particulars of the disposition he desired to make of his property, and it appears from the testimony of the scrivener,

that the very language of the will was the testator's. It may be remarked that he was not accompanied by any one when he went to Horsley's office. The scrivener knew the testator well, and he speaks in positive language of his entire conviction that the testator was possessed of full testamentary capacity. Hulse was not previously acquainted with him, but he conversed with him on the occasion, and had an opportunity of judging of his competency. Both are very intelligent witnesses. The other testimony in the cause shows that, at that time, the testator was in the full possession of his mental faculties; that he was able wisely to conduct business transactions involving very large sums of money, and indeed there is no evidence of any importance or value against his testamentary capacity. As before stated, the will was made seven years before he died.

Nor is there any proof of undue influence. His wife appears to have been very kind and affectionate towards him, and to have been extremely attentive to his wants and comfort to the very last. In the will, he remembers all his children. His estate is all personal. To his daughter he gives but $2,000, indeed, and to his son John but $8,000, while he divides all the residue of his estate equally between his other son, James, and the widow. What the amount of the residue will be does not appear clearly, but out of the estate, is (it is said) to be paid to the testator's children a considerable sum of money for their legacies under the will of his second wife. The widow was his third wife. That he had reasons for the difference which he made in the bequests to his children, is evident from the testimony, but if he was possessed of testamentary capacity, and was free to do as he would in the testamentary disposition of his estate, it is not necessary to inquire for his reasons. The law guaranteed to him the right to make disposition of his property according to his own pleasure. I have not deemed it necessary to discuss the evidence, either on the subject of capacity or undue influence. There is no evidence on either head, except what is produced by the caveators. The burden of proof is on them. Capacity in a man theretofore sane, will be presumed until the contrary is made to appear, and undue influence is to be established by

proof. As has been said, it is by no means enough to establish undue influence, to show interest and opportunity. The decree admitting the will to probate will be affirmed, as also will the order for the payment of the costs and expenses of the litigation in the orphans court out of the estate, but no costs of the appeal will be awarded to either side.